at all, or arguments not to exceed 15 minutes per side, Marcia Borges-Andrew for the appellate. I'd like to reserve four minutes for rebuttal. Marcia Andrew for the plaintiff appellant, trustee of the Antioch Company Litigation Trust. May it please the court and counsel, we have raised three issues for review that are independent of each other. The trustee's claim to recover damages caused by defendant's fraudulent self-dealing in connection with an ESOP transaction that occurred in 2003 will be revived if this court reverses on the statute of limitations issue. Is that a fiduciary claim? It's a fiduciary claim sounding in fraud, yes, your honor. The trustee's separate claims to recover damages caused by defendant's self-dealing in connection with the corporation's attempt to sell or restructure itself in the 2007-2008 time period were timely filed. A reversal on the damages issue will revive those claims. And the trustee's claim to equitably subordinate the defendant's interests in the litigation trust itself based on the unfair conduct of defendants during both of those time periods is an issue of overriding importance. Affirming the district court on this issue would allow the defendants to receive 72% of any distributions the trustee is able to make from damages recovered both in this case and a related case against the company's lawyers. This is the type of injustice that Section 510C of the Bankruptcy Code is intended to avoid. None of these three claims were decided on the merits below. Each of the issues presented for review depends for its resolution upon disputed issues of material fact that were not recognized by the district court. I was not able to find any Ohio authority that supports your equitable tolling argument as applied to this particular limitations provision. Am I missing any of them? Your Honor, we did cite to Ohio authority in our brief Ohio cases recognizing the equitable tolling as an exception to the statute of limitations. In exceptional circumstances where there is fraud or misrepresentation. Did you allege fraud? Your Honor, we did allege the elements of fraud. We filed after the bankruptcy court issued its report and recommendation on motion to dismiss. The bankruptcy court recognized that some of these exceptions to the statute were applicable where fraudulent conduct claims sounding in fraud were alleged and invited the trustee to amend its complaint, which we did. I can cite to you some of the paragraphs in the amended complaint that sound in fraud. The amended complaint is Bankruptcy Document 275. Paragraphs 59, 71 to 73, 80 to 83, 87, 73, 99, 108, 121, 151 to 155, 154, 67, 71, 90, and 168 to 169. We allege that the breach of fiduciary duty by the defendants was committed through fraud and misrepresentation that was done through an abuse of their fiduciary positions. That's why we labeled it as a fiduciary duty claim. But as the court in Squire recognized and as Judge Humphrey of the Bankruptcy Court recognized, the claims must be analyzed in terms of what's actually alleged and not a label. We do believe that we allege fraud and that the exceptions to the statute of limitations that apply or can apply in situations involving fraud and misrepresentation are applicable in this situation. Did we certify to the Ohio Supreme Court the adverse domination issue? It seems that my understanding is that there only are decisions from the Ohio 8th District, 8th Appellate District, two decisions from that one court. And otherwise, there are no Ohio decisions on adverse domination. That is correct, Your Honor. And for that reason, it's an issue of first impression in Ohio. And we believe that the Ohio Supreme Court should be given the opportunity to review the issue and determine whether in a situation like this, a breach of fiduciary duty claim that sounds in fraud and misrepresentation, whether the adverse domination theory should be adopted as the majority of jurisdictions. Well, I mean, one way to give them that opportunity would have been to bring this case in Ohio State Court, as you could have, and you chose not to. That is correct, Your Honor. This case did arise as an adversary proceeding in the Bankruptcy Court, so it got to federal court through that process. But you could have filed separately in state court, couldn't you have? And please don't nod and all that. I'm sorry it's distracting. Your Honor, we could have, except that we have bankruptcy claims as well. We have the equitable subordination claim, which is a bankruptcy claim. And so, that was one of the reasons why we also had claims for . . . preference claims against some of the defendants, which are bankruptcy claims. I think, I mean, we have some authority that says if you want to seek certification, you need to do it before the district court rules against you on the state issue. You can't sort of lay back and see how it goes. What's your sense of that? We're aware of that authority, Your Honor. And I would just say that the rule itself doesn't put a time limitation. It says you can raise the issue of certification at any time in a case. And frankly, we felt that below, that the issue was not controversial, that the circumstances of this case were so clearly within the circumstances at which adverse domination is meant to address, that the district court could use its discretion as it's allowed to under federal law to predict how the Ohio Supreme Court would rule. That's another alternative for us as well, right? For us to say that given that the Ohio Supreme Court has not ruled and given that the majority of states that have ruled support adverse domination, that as a theory that we believe Ohio would adopt adverse domination. That's correct, Your Honor. You could rule that yourself without certifying it. If I've answered that question, I'd like to switch briefly to the issue of adverse domination itself. I'm sorry, the issue of equitable subordination. The Bankruptcy Code, Section 510C, provides that for reasons of equity, a court may subordinate claims to like claims and interests to like interests. That is what the trustee is seeking to do here, to subordinate defendants' interests in the litigation trust as unsecured creditors of Antioch to the interests of other non-insider unsecured creditors of Antioch. The litigation trust is a representative of the bankrupt estate, and it bargained for the transfer of those debtors' equitable subordination rights as part of the reorganization plan. Those rights to equitably subordinate were included within the plan in at least five separate places in the plan that was then confirmed by the bankruptcy court. It is included in Sections 5.13, 1.124, 1.80, 1.44, and 8.1 of the plan of reorganization. I apologize if I'm not understanding this case properly, but my understanding was that the bankruptcy plan only transferred to the trust the right to seek equitable subordination of allowed claims as opposed to allowed interests, and what's involved here are allowed interests. Am I missing the boat completely here? Your Honor, there's a lot of semantics and definitions involved here, and the bankruptcy courts like to define every term, but equitable subordination rights in the plan, they're defined in the plan of reorganization, Section 1.44, and they're defined as the right, I'm quoting, the right of any party to seek equitable subordination or recharacterization of any claim with a capital C pursuant to Section 5.10 of the Bankruptcy Code. Claim with a capital C is then defined in the plan as meaning claim under Section 1.015 of the Bankruptcy Code, so then we have to go to Section 1.015 of the Bankruptcy Code, which defines claim as a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. That's a very broad definition of claim. It doesn't include interests. It does include interests in that it talks about equitable or legal claims, and the distinction in 5.10 between claims and interests is to say that you cannot try to subordinate a claim which arises out of a secured or unsecured legal right against equity, which in bankruptcy is usually referring to shareholders, stock. You can't subordinate the rights of a creditor to shareholders or vice versa. But you can subordinate the rights of creditors to creditors and shareholders to shareholders. I mean, a claim is a right to payment. Yes. Basically any right. That's basically what the bankruptcy is. And interest is property of the estate or something like that, right? It's just property as opposed to a right to payment. Isn't that? Your Honor, I don't believe so. I believe the distinction is that interest in Section 5.10, that refers to equitable interests, whatever rights a shareholder has as opposed to the rights of a creditor. So as a non-expert in this area, as I'm understanding your position, a claim is a creditor type. I don't want to use the word interest. A creditor type involvement. Rights of payment. Right. And an interest is an equity. Shareholders' right. Right. Correct. Which in bankruptcy, equity comes last. The rights of shareholders in bankruptcy come only after all creditors have been satisfied. But here, what happened is the defendant's claims, which were unsecured claims based on subordinated notes that they received in the 2003 transaction, became interests in the litigation trust. The defendants would not have received any interest in the litigation trust but for having the unsecured claims of a creditor against the company. And the interest that they received in the trust, they received in proportion to, their rights as an unsecured creditor in relation, pro rata, to all the other unsecured creditors. I see that your red light is on. Judge, just another question. I'll let you have your rebuttal time then. Yes. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Mike Shire on behalf of Lee Morgan and Asha Moran. Maybe to start with, Ms. Andrews, a wrap-up and to address some of the questions you had. The bankruptcy, I guess the blessing and the curse of the 510C claim is really the same. The blessing is we have a statute that defines what a claim is and what an interest is and what subject have rules of ordination. And the curse is we have a statute that defines what a claim is and what an interest is. And we brief that for your honors. And in short, a claim is a right to payment. And in this particular bankruptcy case, in the evidence before Judge Black, because we're here after all in summary judgment, was that our clients' Class V claims were allowed but did not receive any distribution under the plan. And that's how those claims were dealt with. There was a completely separate issue, and that was in the context of negotiating the plan of reorganization. Our clients had claims against the secured lenders, claims in the pure litigation sense, not in the bankruptcy code sense. They had an option to prosecute those claims wherever they chose to prosecute them or instead to exchange them for an interest, in other words, to release them, those claims against the secured lenders, in exchange for a beneficial economic interest in a state law trust. That's called the litigation trust. And that's the interest, lowercase i, that our clients have in the state law litigation trust. The interest, the word interest, that is addressed in Section 510C is an equity interest of the debtor. And all 510C says is that. In other words, it wouldn't apply to your client's interest in the trust. There's not even, there's no question. The bankruptcy code cannot be read in any way, shape, or form because those terms are defined, and we note that in our brief. Section 541, I mean, what's the property of the debtor provision again? Well, the proper, where's interest defined, I guess? Interest is defined in 101. We go through it in our brief. And it's kind of, you have to go through, an equity security holder in the code is defined in 10117. It's defined as a holder of any equity security of the debtor. And equity security is defined as a share in a corporation, whether or not transfer a denominated stock. And that's just how the, that's how interest is defined, and that's what an interest is under the code. So interest, as Ms. Andrew conceded, are dealt with last. And equity interests, of course, they come last in the order of priority under the bankruptcy code. And so there's little question that, actually, there's no debate that the interest dealt with in the bankruptcy code in terms of equitable subordination deals with an allowed interest. In other words, the bankruptcy court looked at an equity interest. Was it allowed? And then the bankruptcy court would have to determine whether or not that equity security holder was going to be able to retain their equity interest in the debtor if the plan paid either all secured and unsecured creditors in full and then equity would retain their interest, or there was some sort of a consensual deal struck to allow equity interests to retain their equity in the reorganized debtor. That's all Section 510C is about. What you're saying now is that apart from the limitations issue, in essence they haven't stated a claim for equitable subordination, or they haven't stated a claim under 510? I just want to understand where this is. Absolutely. The 510C issue summary judgment was appropriate because there's a legal impediment. The way the facts came in, when you look at the factual issues and what interests were at stake, 510C just doesn't apply as a matter of law. It's not a bankruptcy question. The interest that Mr. Morgan and Ms. Moran and certain family trusts have in the litigation trust was done through a completely separate deal, and that was to give up a valuable litigation right against secured lenders by providing those secured lenders with a release, and in turn they received as consideration for that release an interest, little lowercase i, in a state law trust. Bankruptcy code, the 510C doesn't deal with that at all. It deals with claims and interest pending against the estate. Our clients didn't file a proof of interest against the estate. Is that the exact language, claims or interest pending against the estate? Oh, absolutely. You have to file a- I thought you said interest, though, is something that the debtor itself typically holds. No, it's what-no, no, don't, please. It can't-I believe the bank- I don't have the code in front of me. It's not the issue. An interest is simply what a-it's a shareholder. A prepetition shareholder can file a proof of interest in a bankruptcy case, and depending on either a consensual plan or the debtor being able to pay every level of credit or above the shareholders, you either retain your equity interest in the reorganized debtor or you don't, and that's the interest. And if there's some sort of reason, if equity interests receive distributions, i.e., stock, in the new debtor, then 510C, if there's some sort of misconduct, allows a bankruptcy court to consider subordinating an allowed equity interest in the debtor to a similarly allowed interest in the debtor. And Judge Black, in his comprehensive opinion, noted the claim-our client's claim was not- there was no distribution. All you can do is subordinate a claim for distribution purposes to another claim for distribution purposes. Does the record say anything about why your clients agreed to take nothing on their claim? No. It was a negotiated plan, a prepackaged plan of organization that went in, and they and all other Class V creditors, they were far from the only Class V creditors. There were many, many Class V creditors. All of the trust beneficiaries were at one time Class V creditors. Those that released the bank received interest in the trust. Those that didn't were able to continue to prosecute their claims against the estate. Or sue the banks. So that's the 510C issue, and it basically was a legal issue. Really, the case comes to the court on two summary judgment motions we filed. One was simply that the 2003 related claims, Count 1, a breach of fiduciary duty claim, was filed after the four-year statute of limitations, and on that there's no dispute. Yes, but it was filed within one year of the trustee being appointed. And I'm concerned about why adverse domination theory shouldn't apply here. If you're speaking specifically about adverse domination because the claim arises under Ohio law and two Ohio cases have held that adverse domination. The two cases are from one appellate district. Ohio has like 13 appellate districts, and all of them are equals and are not binding on the Ohio Supreme Court. It's just like one district court saying something. I understand, and it's authority. And it's authority that... You're not bound in deciding Ohio state law by one Ohio court of appeals decision. Well, I believe that as a federal court, under the Erie Doctrine, it would be very persuasive to know what Ohio courts have addressed an issue. Those Ohio courts have addressed this, but I have a more important... We know that in Ohio there are 13 equal courts, and they can do things in conflict with each other, and that it's just one court who said this. I don't know that we would say if we thought it was logically wrong that we thought the Ohio Supreme Court would adopt this logically wrong theory that one of their subordinate courts had adopted. So let's get to the merits of adverse domination. Why wasn't there adverse domination here, such that there should be a tolling of the statute of limitations? I'll answer that question. I'll also respond to the point about the only one appellate court, because there's some good news there. The Ohio Supreme Court, in a 3-1 decision, affirmed that the squire court, the district's 1947 decision, was still good law. The adverse domination... Not on adverse domination. No, but squire was an adverse domination case. And it also involved something else. But get to the merits of adverse domination. Why shouldn't there be tolling because of adverse domination here? Well, here's the prejudice. First of all, I'll tell you it's not recognized under Ohio law. That's the state of the law. Assume I'm wrong on that because there's a waiver issue in play. The plaintiffs had not... Judge Humphrey held, as did Judge Black, that adverse domination does not exist in Ohio. That recommendation was on a non-core state law claim, so Judge Humphrey's ruling wasn't a final order. We, and many of the other defendants, took Judge Humphrey's ruling that was on a motion to dismiss under Federal Rule 12, up to Judge Black on a... But that adverse domination, and that the plaintiffs should be able to conduct discovery to determine whether or not there was any tolling concept applicable to save the late fiduciary duty claim... You're not understanding my question. My question is, why wasn't there adverse domination, or at least enough evidence of adverse domination by Morgan and Moran such that tolling under the adverse domination theory, which I'm making you assume is available as a theory, should apply here? Because in this case, it would be unfair to apply it when the plaintiff did not object to the recommendation of Judge Humphrey that adverse domination is not a recognized concept in Ohio law, and allowed... You're not getting the merits. I am getting the merits. So you're saying they waived it. Well, Your Honor, because no one... I think you don't have an answer, is what it is. I do. I'm going to give you the answer. I'm going to ask you about the waiver thing. We were unable to develop a record. We are focused... The issue is, once they don't object to what Judge Humphrey said, and the district court adopts Judge Humphrey's view, then the legal landscape of the issues that we're going to now undertake here with the discovery are defined, and adverse domination was not one of them. So not a single defendant was given the opportunity to take any discovery going towards adverse development, and we make that waiver argument in our papers. So what would a remedy be to vacate and remand, and to say, let there be discovery on the facts having to do with whether or not Morgan and Moran adversely dominated this company? No, that would not be a remedy on appeal. This was a summary judgment motion. The record's closed. These plaintiffs could have filed the Rule 56d motion at any time. When the summary judgment motions were filed, they could have filed the Rule 56d motion to ask for more time to explore adverse domination. No one was given the opportunity because this plaintiff chose not to object to Judge Humphrey's recommendation that adverse domination is not a recognized tolling theory in Ohio, and that cut off that particular legal theory. It led the defendants into a position where they were not going to pursue it. I have a question, if I may, on that. You said Judge Black held that there is no adverse domination theory. As Mr. Muthing will attest. Under Ohio law, why would he make that holding if they didn't pursue this after the bankruptcy judge recommended against applying that doctrine? Because of the way the summary judgment briefing came down, and that was the plaintiff's own choice. We had moved. Our motion was simple. Here's when the claim arose. Here's when they filed their claim. It's late. They then came back in opposition and raised adverse domination again. In reply, we noted, hey, that's waived. It would be unfair to even consider it. I just want to understand procedurally exactly what you're saying. So what you're saying is when this case goes from the bankruptcy court to the district court, they did not make any effort to obtain discovery, which would in turn create a genuine issue as to any of the factual predicates for adverse domination. Is that what you're saying? I believe that's true. But more importantly, from a waiver perspective, none of the defendants were put on notice that that was a live defense because the plaintiffs never challenged Judge Humphrey's finding that was then incorporated in Judge Black's. What if they challenged it procedurally? What should they have done? Under Rule 9033 of the bankruptcy rules, they, like we, could have objected to that particular recommendation of Judge Humphrey, and they should have. This is a Stern claim that's going up at this point? No. No, this is not a Stern claim. This is simply a defense that they had raised to our motion to dismiss in the bankruptcy court that the bank's court rejected and recommend that the- Their claim is something that's covered by Stern. Article III judge has to enter final judgment on that. Right, only because those were non-court claims, state law claims, that then came to the district court by way of- They don't object to the recommendation of the bankruptcy judge to find this to be time-barred or to not apply this tolling doctrine? To not apply adverse domination. And here's what's prejudicial to defendants. Judge Humphrey said, the court should deny the motion to dismiss and allow the plaintiff to conduct discovery on equitable tolling and equitable estoppel theories, but not on adverse domination because Ohio doesn't recognize that. The proper procedure here would have been for the plaintiff to object to that finding  and you should not enter that particular part of Judge Humphrey's recommendation. They didn't do that. So at that point, we run off and do a year's worth of discovery relating to equitable tolling and equitable estoppel. You've seen Judge Black's, I think, considered opinion on those. And I would note, adverse domination, REIT I is very relevant because REIT I says you can't graft a discovery rule onto Ohio Vice Code 2305.09d. Adverse domination is just the corporate equivalent of the discovery rule. So basically what the plaintiffs are asking is that a discovery rule that this court, a federal court, graft onto 2305.09d, a corporate discovery rule, when the legislature hasn't, and that's contrary to REIT I, and there's just no data. That's data that the appellate decisions rejecting adverse domination cited with authority by the Ohio Supreme Court in REIT I should not be adopted, and we do reference that in our papers both in our motion. I'm setting the record for the longest sentence ever. Okay. I'll leave it to the presiding judge. In our memorandum opposing the motion. Thank you, Your Honors. I appreciate the patience. So could you respond at the outset to the key argument your opponent raises, which is that you waived the adverse domination point by not appealing the bankruptcy judge's ruling against you to the district court? Yes, Your Honor. I'd be happy to. First off, we won the motion to dismiss. Judge Humphrey issued a 130-some-odd-page decision denying the motion to dismiss on multiple grounds, and so to object to a decision that went in our favor 11 twelfths of the way didn't seem like a very polite thing to do. Secondly, Judge Humphrey in that decision did not outright reject adverse domination. What he said was he didn't believe Ohio would recognize it at this time. That was after a long discussion analyzing how really it was a theory that was consistent with Ohio law and made sense, but he said that he left open that with allegations of fraud, the doctrine might be adopted in Ohio and invited the trustee to amend its complaint, which we did, to include allegations of fraud and misrepresentation. The cite to that part of the report and recommendation is R6 at page ID 345. So your opponent also argues that there was all this discovery for a whole year of discovery on the equitable tolling and not on the issue of adverse domination, and so they would be prejudiced by this lack of discovery. How would you respond to that? Your Honor, I completely disagree with that. Over 30 depositions were taken in the case, including all of the directors during all the relevant time period, so there was ample opportunity to take Did they proceed to ask questions or defend on the issue of adverse domination during that discovery if the discovery was limited to equitable tolling? There was nothing that limited the discovery. There's nothing in Judge Humphrey's decision or Judge Black's adopting it that says there will be no discovery on adverse domination. Those depositions were free and open, and what the record shows is that these defendants controlled the company. All the defendants who were directors at the time of the 2003 transaction remained on the board all the way up until bankruptcy, with the exception of one going off the board and then someone who had been an officer during that time period becoming a director. There was complete, seamless control of the people who were alleged to have committed wrongdoing in 2003, continued to control the corporation during the whole time period. I did want to, Judge Kethledge, you had asked for citations on Ohio law on equitable tolling, and those are at our principal brief at page 42 and our reply brief at page 17, including the quote that the doctrine of equitable tolling may be used to avoid the inequitable use of the statute of limitations, and that's citing Livingston v. Diasis of Cleveland, an Ohio appellate case from 1998. Thank you. Judge Black seemed to construe the bankruptcy judge's determination as to adverse domination to be a recommendation not to recognize that doctrine under Ohio law, and Judge Black said you didn't object to that recommendation. Accordingly, he says it can't be used as the basis to toll. Is he misconstruing the record that came up to him there? Well, he's correct. We did not object to the bankruptcy's report and recommendation, but I think he is misreading Judge Humphrey's decision as being something more final than it was and completely ignoring that we filed an amended complaint to address what Judge Humphrey saw as deficiencies in having the claim fall within the doctrine of adverse domination. I have one question. Sure. Is it your position on adverse domination that are you asking us to certify the question? Are you asking us to rule that, in fact, the Ohio Supreme Court would recognize the doctrine? What are you actually seeking? Your Honor, I believe the court has both of those options. You could decide it yourself or you could certify to the Ohio Supreme Court because it is an issue of first impression and it does impact not just this case but the related case against the company's lawyers, where we also filed a motion to certify in the district court, and the defendants in that case joined with us and agreed that it should be certified, but Judge Black felt that because we were already coming up to see you all in this case that he would wait and see what this court . . . And the defendants in that case are the law firm? The law firm that represented the company throughout this whole time. If we were to certify the question, what happens to the rest of this case? Well, as to . . . if the court reverses on the other issues and remains, Judge Black would have to decide what to do with the rest of that case pending the statute of limitations issue, whether to go forward or to stay. And the other case has already stayed pending some resolution on that issue of the statute of limitations and adverse domination. This defense or this issue, adverse domination, only goes to your claim one? Is that right? That's correct, Your Honor. It only goes to claim one. So the other claims, if the court were to reverse on damages, that would revive the 2007-2008 timeframe claims. Those have not been determined on the merits. So the adverse domination is not the linchpin of the whole case, in other words? No, just the first claims related to the 2003 transaction. That's a big claim, though, I guess. It is substantively a big claim, yes. It's the aircraft carrier and the other ones are cruisers or something? Not a bad analogy. Thank you. Thank you, Your Honor. Vote for your argument. The case will be submitted with the clerk adjourned court.